**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| BRIAN CARLTON and | : | |
| MARGARET CARLTON, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 2:22-cv-480 |
| | : | |
| | : | |
| vs. | : | |
| | : | |
| NORWIN SCHOOL DISTRICT, | : | |
| ROBERT WAYMAN and | : | |
| WESTMORELAND COUNTY | : | |
| REPUBLICAN COMMITTEE, | : | |
| | : | |
| Defendants | | |

**BRIEF OF DEFENDANT, NORWIN SCHOOL DISTRICT,
IN SUPPORT OF MOTION TO DISMISS PURSUANT TO
RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Defendant, the Norwin School District (hereinafter the "District"), by and through its attorneys, Andrews & Price, LLC, files the following Brief in Support of the District's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

## I.     BACKGROUND

Plaintiffs initiated this matter by the filing of a Complaint on March 21, 2022.  Plaintiffs filed an Amended Complaint on May 25, 2022.  As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant assumes Plaintiffs' allegations to be true, and views all facts in the light most favorable to them. Viewed according to these standards, the facts affecting Plaintiff's

claims against the Defendants are construed as follows for purposes of resolving the Motion to Dismiss.[1]

Plaintiff Brian Carlton is a former President of the Norwin School District Board of School Directors. (Amended Complaint – hereinafter "C" – ¶15). Plaintiff Brian Carlton is, and was at all times relevant to the Amended Complaint, also employed as a special education teacher in the Penn Trafford School District. (C ¶ 42). Defendant Robert Wayman (hereinafter "Wayman") is, and was at all times relevant to this Amended Complaint, a member of the Board of School Directors for the Norwin School District (hereinafter "District"). (C ¶ 14). Plaintiff Margaret Carlton is Plaintiff Brian Carlton's wife. (C ¶ 6). Plaintiff Margaret Carlton is, and has been at all times relevant to the Amended Complaint, employed as a teacher at the Norwin School District. (C ¶ 30).

During the time they served together on the District's Board of School Directors, Plaintiff Brian Carlton issued various public statements in opposition to political comments made by Defendant Wayman. (C ¶ 15).  At a virtual school board meeting on September 21, 2020, Plaintiff Brian Carlton voted in favor of motions to call for Defendant Wayman's resignation from the board, to censure Defendant Wayman and to remove Defendant Wayman from his position as Pennsylvania School Board Association ("PSBA") liaison. (C ¶ 19).   None of these motions passed. (C ¶ 20).   Plaintiffs aver that, at this meeting, Defendant Wayman stated that he would "seek recourse against any individual that voted to take any action against him." (C ¶ 18).  Plaintiff Brian Carlton left office upon losing his bid for reelection to the District's Board of School Directors in November of 2021. (C ¶ 29).

---

[1] In accordance with the standard of review, the "facts" relevant to this Motion to Dismiss are taken from the Plaintiffs' Amended Complaint. By no means does the District concur with this rendition of the facts other than for the purpose of resolving this motion.

Following the January 17, 2022 meeting of Defendant District's Board of School Directors an individual named Michelle Mendenhall sent an email to Defendant District's Board of School Directors, including Defendant Wayman. (C ¶ 32). In her email, Ms. Mendenhall claimed that, while she was attending that meeting, "a projectile was launched" at her from the table that Plaintiff Margaret Carlton was sitting at. Defendant Wayman responded that he "would do everything in his power to identify the culprit and make sure they are prosecuted to the full extent of the law." (C ¶¶ 32, 34).   Plaintiffs, in a vague and conclusory fashion, allege that, based upon their theories about Defendant Wayman's state of mind and motivation, he "intended to identify [Plaintiff Margaret Carlton] as the "culprit" to interfere with her employment and business relationship with the District."(C ¶¶36, 37).

Plaintiffs plead no facts in their Amended Complaint which set forth any further statements or actions taken relative to this incident by anyone associated with the District.  Plaintiffs have not alleged in their Amended Complaint that anyone associated with the District ever accused Plaintiff Margaret Carlton of throwing a projectile at Ms. Mendenhall. Plaintiffs have not alleged in their Amended Complaint that the District, or any other School Director or District employee took any adverse employment action against Plaintiff Margaret Carlton.

Plaintiffs further allege that "[o]n or about February 7, 2022" a letter was sent to Plaintiff Brian Carlton's employer, the Penn Trafford School District, which accused him of "spread[ing] lies and slander[ing] people because he is upset that he was unseated from the Norwin School Board" and engaging in "unprofessional and possibly illegal behavior." (C ¶43).  The letter also stated that the sender[s] would report Plaintiff Brian Carlton to the Pennsylvania Department of Education for his alleged misconduct. (C ¶47).  This letter was signed "Concerned Citizens of Penn

Trafford School District." (C ¶43).  Plaintiffs have not plead any facts which identify Defendant Wayman as the author or sender of the letter, or as the source of the allegations contained therein.

In the Amended Complaint, Plaintiffs assert that "Plaintiff Brian Carlton "believes, and therefore avers, that Defendant Wayman made the statements in that letter'" based upon a vague and conclusory allegation that "Defendant Wayman has told individuals in the community that he would attempt to have Plaintiff Brian Carlton removed from his position as a teacher in retaliation for his political opposition to Defendant Wayman." (C ¶49).  Plaintiffs do not identify any individuals who heard Defendant Wayman make such a statement. Plaintiffs have not plead facts in their Amended Complaint which allege that any other School Director or District employee took action which caused this letter to be sent to Plaintiff Brian Carlton's employer.

Plaintiff's Amended Complaint contains the following two counts against the District: Count II (asserted by Plaintiff Brian Carlton against all Defendants) - Constitutional and Civil Rights Pursuant to 42 U.S.C. §1983, First Amendment Retaliation; and Count III (asserted by Plaintiff Margaret Carlton against Defendants District and Wayman) - Constitutional and Civil Rights Pursuant to 42 U.S.C. §1983, First Amendment Retaliation.

The District files the within Brief in Support of the Motion to Dismiss all of the counts set forth against it in Plaintiffs' Amended Complaint (Counts II and III), as Plaintiff's claims fail to state a claim upon which relief can be granted.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*,

550 U.S. at 570). In *Iqbal*, the Supreme Court outlined a two-part analysis that district courts must conduct when reviewing a complaint challenged under 12(b)(6). *See Flower v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009).

In *Fowler*, this Court held that, following *Iqbal*, motions to dismiss for failure to state a claim in civil cases should be subject to a two-part analysis.[2] *Fowler*, 578 F.3d at 210–211. First, the court should separate the factual and legal elements of a claim; it must accept any well-pleaded facts as true but may disregard any legal conclusions. *Id*. Second, the court must determine whether the well-pleaded facts are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. If the well-pleaded facts do no more than permit the court to infer the mere possibility of misconduct, the complaint has not "shown" that the pleader is entitled to relief.[3] *Id*.

The Court recognized in *Fowler* that both *Twombly* and *Iqbal* specifically repudiated the earlier standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which permitted dismissal of a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fowler*, 578 F.3d at 210.

A complaint must do more than allege the plaintiff's entitlement to relief, but instead must "show" such entitlement with its facts in order to survive a motion to dismiss. *Id*. Therefore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

---

[2] In *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), c*ert. denied*, 132 S. Ct. 1861 (2012), the Court added the step of first identifying the elements of the plaintiff's cause of action.
[3] *Twombly* and *Iqbal* are not satisfied by the presence of *any* factual allegations, but only by factual allegations sufficient to support a plausible, rather than simply conceivable, claim.

Although this Court must accept all well pleaded facts in the complaint as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). Because Fed. R. Civ. P. 8 (a)(2) requires a showing, rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).

Indeed, it is not sufficient to allege mere elements of a cause of action; instead a complaint must allege facts "to raise a right to relief above the speculative level." *Umland v. Planco Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Examination of the context of the claim, including the underlying substantive law is therefore necessary in order to properly assess plausibility. *Renfro v. Unisys Corp.,* 671 F.3d 314, 321 (*citing In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell*, at 690, n. 55, 98 S.Ct., at 2035, n. 55.

### III.   ARGUMENT

**A.   All of Plaintiffs' Claims Fail Because the Plaintiffs Have Failed to Set Forth Material Facts to Establish that the District Took Any Action Based Upon the Affirmative Vote of a Majority of School Board Directors.**

The Pennsylvania Public School Code of 1949 (Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702) (hereinafter the "PA School Code") confers upon the District's Board of Directors the responsibility of managing the affairs of the District.  It also confers upon the Board any implied powers which are necessary to give effect to this responsibility.  The PA School Code confers no authority upon *individual* school board members to act unilaterally under the guise of carrying out the responsibilities of a board as a *whole.* The law is clear that actions by a School Board are taken by collective authority. *See generally,* Sections 101–2702 of the PA School Code.  *See also Bangor Area Educ. Ass'n v. Angle*, 130 Ed. Law Rep. 830, 720 A.2d 198, 201 (Pa. Commw. 1998).

Section 510 of the PA School Code provides that a school board may adopt and enforce reasonable rules and regulations it deems necessary and proper regarding the management of its school affairs.  However,  there are no procedures in existence that confer upon individual Board members the authority to act on behalf of the District without approval by the Board as a whole. In other words, neither the PA School Code nor any regulation enacted pursuant thereto confer upon any member of the District's Board of Directors the authority to *individually* act on behalf of the District. *See Bangor*, at 201.

Plaintiffs allege in conclusory manner and without any factual support that certain actions of Defendant, Robert Wayman, were taken in his official capacity as a member of the District's Board of Directors, there are no allegations in the Amended Complaint that a majority of School Board Directors authorized Mr. Wayman to engage in the conduct alleged, or otherwise Act on

behalf of the Board as a whole.  Again, The law is clear that actions by a School Board are taken by collective authority.  *Id.*

As there were no affirmative acts taken by the District, the District cannot be held liable to Plaintiffs under any theory of liability.

**B.      Plaintiffs' claims of First Amendment retaliation against the District set forth in Counts II and III of the Amended Complaint must fail, as they have failed to plead any facts by which this Court may adduce that the District or any District employee took a retaliatory action against them.**

Even assuming for the sake of argument that Defendant Wayman's alleged conduct could somehow constitute affirmative action on behalf of the District, to plead a First Amendment retaliation claim pursuant to Section 1983, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir.2006). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir.2000).

"Where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect [one's] First Amendment rights, even if defamatory." *Municipal Revenue Services, Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 687 (4th Cir.2000)). "A retaliation claim is not the proper vehicle for the resolution of quotidian disputes among elected officials." *Zimmerlink v. Zapotsky*, 539 Fed. Appx. 45, 50 (3d Cir. 2013)(unpublished) *citing Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

While Plaintiffs have sufficiently alleged that Plaintiff Brian Carlton engaged in constitutionally protected conduct through his political opposition to Defendant Wayman, they have failed to plead facts by which this Court can reasonably adduce that the District or any District employee took any retaliatory action against him or his wife. Rather, Plaintiffs have only offered unsupported theories and conclusions regarding actions that they believe were taken by Defendant Wayman while acting "in his capacity as a duly elected school board member of Defendant District."

Courts, when reviewing a Rule 12(b)(6) motion for dismissal, must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them. However, they are not required to accept as true unsupported conclusions and unwarranted inferences. *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co*., 113 F.3d 405, 417 (3d Cir. 1997). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *City of Pittsburgh v. West Penn Power Co*., 147 F.3d 256, 263 (3d Cir.1998). While courts draw on the allegations in a complaint, they must do so in a "realistic, rather than a slavish, manner." *Id.* No realistic construction of the allegations plead in Plaintiffs' Amended Complaint can give rise to a plausible claim of First Amendment retaliation.

## Count II- Plaintiff Brian Carlton.

In Count II, Plaintiffs allege that Defendant Wayman authored a letter containing "false and defamatory" statements about Plaintiff Brian Carlton's character and professional conduct, which was sent to his employer, the Penn Trafford School District. In support of this allegation, Plaintiffs plead that "Defendant Wayman has told individuals in the community that he would

attempt to have Plaintiff Brian Carlton removed from his position as a teacher in retaliation for his political opposition to Defendant Wayman."

Nowhere in the Amended Complaint do Plaintiffs identify the person or persons who heard Defendant Wayman make this statement. Nor do they plead any facts which could otherwise identify Defendant Wayman as the author of this letter or the source of the allegations made therein. Plaintiffs have not alleged that any other School Director or District employee sent or authored the letter or were the proponents of the allegations set forth therein. Rather they are reliant on Plaintiff Brian Carlton's unsupported conclusion that Defendant Wayman, acting for the District, was responsible for this letter being sent to his employer. The Court cannot adopt these unwarranted inferences as fact. Plaintiffs' have failed to plead a plausible claim that anyone acting on behalf of the District committed the actions that Plaintiffs claim were taken against Brian Carlton in retaliation for his protected First Amendment activity.

Even assuming, arguendo, that the Plaintiffs' Amended Complaint contained facts which allow the Court to plausibly adduce that Defendant Wayman sent the anonymous letter to Penn Trafford School District, it would still fail to meet the standard for First Amendment retaliation when the only retaliatory action alleged is in nature of speech by a government official articulated by the Third Circuit in *McBlain*. Plaintiff has not alleged that the letter sent to Penn Trafford School District contains any "threat, coercion, or intimidation intimating that punishment, sanction or adverse regulatory action" by the Norwin School District "will imminently follow." *McBlain* at 825. In fact, Plaintiff Brian Carlton does not even allege that the letter was sent to him. The only allegation Plaintiffs make that the letter contains anything resembling a threat of punishment, sanction or adverse regulatory action is the mention of reporting Plaintiff Brian Carlton to "the Department of Education or other proper legal authorities." However, even this allegation does not

reach the threshold for showing retaliatory action based on speech by a government official. The District cannot compel the Department of Education to punish, sanction or take adverse regulatory action against Plaintiff Brian Carlton. Accordingly, Plaintiffs have failed to plead facts necessary to state a claim against the District for First Amendment retaliation against Plaintiff Brian Carlton.

**Count III- Plaintiff Margaret Carlton.**

In Count III of their Amended Complaint, Plaintiffs allege that Defendant Wayman, acting in his official capacity as a duly elected school board member of the District, responded to an email from Ms. Mendenhall who claimed that, while she was attending a meeting of the District's Board of School Directors, someone sitting at the same table as Plaintiff Margaret Carlton threw a "projectile" at her, constituted retaliation. The statement made by Defendant Wayman in response to Ms. Mendenhall was simply a pledge to look into the incident. Plaintiffs do not aver that Defendant Wayman ever mentioned Plaintiff Margaret Carlson by name. Nor does the Amended Complaint identify any adverse employment action taken against Plaintiff Margaret Carlson by the District as a result of Defendant Wayman's email response.

The "key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan* at 235. It is unfathomable that any person of ordinary firmness would be deterred from exercising his First Amendment rights for fear of a school director responding to an email pledging to look into an allegation from a third party that someone threw something at them during a school board meeting.

Allowing Plaintiffs to proceed with this claim on the basis that Defendant Wayman's speech in response to Ms. Mendenhall's email constitutes evidence of retaliatory action "would trivialize the First Amendment to hold that harassment for exercising the right of free speech was

always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Zimmerlink* at 50. It contains no threat of punishment, sanction, or adverse regulatory action and therefore fails to meet threshold requirement for speech by a government official to qualify as retaliatory action in the absence of any other evidence. *McBlain* at 825.

As Plaintiffs have failed to establish that any action was taken by any School Director or District employee against either of them in retaliation for Plaintiff Brian Carlton's political opposition to Defendant Wayman, Plaintiffs have failed to state a claim for First Amendment Retaliation under §1983. Accordingly, the claims against the District in Count II and Count III of the Amended Complaint must be dismissed.

**C.    Plaintiffs' §1983 Claims against the District for First Amendment Retaliation must fail because Plaintiffs cannot demonstrate a retaliatory policy or custom attributable to the District.**

Whether a municipality or other body of local government, such as a school district, may be held liable under §1983 is governed by the doctrine announced in *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental entity, however, may not be held liable under § 1983 for constitutional violations caused solely by its employees or agents under the principle of respondeat superior. *Id.* Liability against a government entity must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights, meaning that "any injury must be inflicted by execution of [its] policy or custom." *Santiago v. Warminster Tp.*, 629 F.3d 121, 135 (3d Cir. 2010) quoting *Monell* at 436.

Proving a government policy or custom can be accomplished in a number of different ways. *Bielevicz v. Dubinon,* 915 F.2d 845, 849-850 (3d Cir.1990). "Policy is made when a 'decisionmaker, possessing final authority to establish municipal policy with respect to the action,'

issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990), quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Ordinarily, a single unconstitutional act by a municipal employee will not create municipal policy. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion). However, a municipality may be liable under § 1983 for a single decision or action by a municipal official, provided the decisionmaker possesses "final authority" to establish municipal policy with respect to the action ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion); see also *Bartholomew v. Fischl*, 782 F.2d 1148, 1154 (3d Cir.1986).

The Third Circuit, in *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 (3rd Cir., 2006), stated that "[i]n order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question...and (2) whether the official's authority to make policy in that area is final and unreviewable." (Internal citations omitted).

This standard was applied by the Third Circuit to a case involving a multi-member board of commissioners in *Laverdure v. County of Montgomery*, 324 F.3d 123 (3rd Cir., 2003). In *Laverdure*, the Chairman of the Board of Township Commissioners made public statements regarding a dismissed employee at a press conference following her separation from employment. In connection with the dismissed employee's Section 1983 claim against the Township, the Court analyzed the Chairman's final policy-making authority: "It is undisputed that only a majority of the three-member Board is authorized to establish policy on behalf of the County. 16 Pa. Cons. Stat. Sec. 504. Therefore, whatever the contents of [the Chairman's] statements, because he was only one member of the Board, those comments do not constitute County policy." 324 F.3d at 125.

The analysis of a single board member's final authority to establish a municipal policy presented in *Laverdure* mirrors the circumstances of the present case. Pennsylvania law is clear that actions by a school board are taken by collective authority. *Bangor, supra*.

Plaintiffs do not allege that any retaliatory actions were taken pursuant to a majority vote of the District's Board of School Directors. Any retaliatory action in the present action is allegedly attributable to one member of the nine-member District Board of Directors, Defendant Wayman. As such, the letter to Penn Trafford School District, even if it were proven to be attributable to Defendant Wayman, cannot provide the basis of the establishment of a policy or custom necessary for a First Amendment Retaliation claim under §1983 against the District. Nor does Defendant Wayman's email response to Ms. Mendenhall constitute a custom or policy of the District. Accordingly, all claims brought against the District fail to state a claim upon which relief can be granted. This includes any individual claims brought against Defendant Wayman in his official capacity with the District. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Because Plaintiffs have failed to state a claim upon which relief can be granted with respect to their First Amendment Retaliation claims against the District, Counts II and III of Plaintiff's Amended Complaint must be dismissed with prejudice.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Defendant, Norwin School District respectfully requests that this Honorable Court find that Plaintiffs have failed to state a claim for which relief can be granted with respect to Count II and Count III of Plaintiff's Amended Complaint. Accordingly, all of Plaintiff's' claims against Defendant, Norwin School District, must be dismissed with prejudice.

Respectfully submitted,

**ANDREWS & PRICE LLC**

By:     <u>/s/ Joseph W. Cavrich</u>
        Joseph W. Cavrich, Esq.
        PA I.D. No. 322929
        Attorneys for Defendant, Norwin School District

        1500 Ardmore Boulevard, Suite 506
        Pittsburgh, PA  15221
        (412) 243-9700

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I have complied with the Court's Order of March 23, 2022 (ECF No. 3), which obligated the undersigned counsel to make a good faith effort to meet and confer with Plaintiff's counsel before filing the within motion to determine whether any pleading defects were curable by amendment, thereby obviating part or all of the motion.

/s/ Joseph W. Cavrich
Joseph W. Cavrich, Esq.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

/s/ Joseph W. Cavrich
Joseph W. Cavrich