**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN CARLTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-480 |
| ) | |
| ROBERT WAYMAN and ) | |
| WESTMORELAND COUNTY ) | |
| REPUBLICAN COMMITTEE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

I.   **INTRODUCTION**

Plaintiff Brian Carlton ("Carlton") brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Robert Wayman ("Wayman") and the Westmoreland County Republican Committee (the "WCRC"). (Docket No. 31). Carlton's claims arise from his engagement in certain activities, as president of the Norwin School Board, involving political opposition to Wayman, also an elected member of the Norwin School Board. Plaintiff avers that, in response to his activities that are protected under the First Amendment to the United States Constitution, Wayman and the WCRC retaliated against him.

The Second Amended Complaint (Docket No. 31), which is the operative complaint here, is the third complaint filed in this matter. In the initial Complaint and the first Amended Complaint, Carlton's wife, Margaret Carlton, was also a named plaintiff, and the Norwin School District was also named as a defendant. (Docket Nos. 1, 7). In response to Carlton's Amended Complaint, which contained seven counts, Defendants filed motions to dismiss and, after the parties' briefing was complete, the Court held oral argument on those motions. (Docket No. 28).

Through a combination of Carlton's concessions and the parties' stipulating to voluntary dismissal of certain claims, the claims against Norwin School District were dismissed and Margaret Carlton was terminated as a named plaintiff. After consideration of the parties' briefs and hearing oral argument, the Court granted Defendants' motions to dismiss the remaining claims in the Amended Complaint (some with prejudice and some without prejudice) and gave Carlton leave to amend. (Docket No. 30). Thereafter, Carlton filed his Second Amended Complaint, which now contains three counts, and the remaining Defendants again filed motions to dismiss.

Presently before the Court are Defendants' two motions to dismiss Carlton's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and Carlton's responses: (1) Wayman's "Motion to Dismiss 2nd Amended Complaint" and brief in support (Docket Nos. 32, 33) and Carlton's brief in opposition thereto (Docket No. 40); and (2) the WCRC's "F.R.C.P. 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint" and brief in support (Docket Nos. 34, 35) and Carlton's brief in opposition thereto (Docket No. 41). After careful consideration of the parties' arguments and for the following reasons, Defendants' motions will be granted, and the claims lodged against them in the Second Amended Complaint will be dismissed without prejudice.

II.   **FACTUAL BACKGROUND**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Second Amended Complaint[1] and in the light most favorable to Carlton, that are relevant to the motions presently before the Court. Carlton is a resident of Westmoreland County, Pennsylvania, and, at the time of

---

[1] Carlton contends that this Court has subject matter jurisdiction over his Section 1983 claims pursuant to 28 U.S.C. § 1331 because they involve a federal question. (Docket No. 31, ¶ 3). Carlton also avers a related tort claim under Pennsylvania law, which entails the Court's exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

the events at issue here, was the duly elected president of the Norwin School District Board of Education (the "Norwin School Board"). (Docket No. 31, ¶¶ 5, 12). Defendant Wayman is a resident of Westmoreland County, Pennsylvania, and at all times relevant to the facts alleged, was and is a duly elected board member of the Norwin School District and a duly elected official of Defendant WCRC. (*Id.* ¶ 6). Defendant WCRC is a public entity and political committee with elected officials in Westmoreland County, Pennsylvania. (*Id.* ¶ 7). The WCRC has several subdivisions within Westmoreland County, one of which is WCRC District 3, which represents North Huntingdon, Irwin, and North Irwin, Pennsylvania. (*Id.* ¶ 8).

Carlton avers in his Second Amended Complaint that during August and/or September, 2020, in his capacity as president of the Norwin School Board, he issued various public statements condemning inappropriate and offensive statements that had been made by Wayman, who was a member of the Norwin School Board at the time he made such statements. (Docket No. 31, ¶¶ 10-14). During a meeting of the Norwin School Board on September 21, 2020, Carlton voted in favor of motions to call for Wayman's resignation, to censure Wayman, and to remove Wayman from his position as Pennsylvania School Board Association liaison. (*Id.* ¶¶ 15, 17). During that same meeting, Wayman stated that he would seek recourse against any individual who voted to take any action against him. (*Id.* ¶ 16).

In April, 2021, Carlton spoke at a WCRC District 3 meeting to seek an endorsement for his re-election to the Norwin School Board. (Docket No. 31, ¶ 20). Carlton avers that he did not act in any inappropriate or harassing manner during that meeting. (*Id.* ¶ 21). Sometime afterward, Wayman, in his capacity as a duly elected official of the WCRC, discussed taking action against Carlton with other members of the WCRC, including WCRC District 3's chairman, Steve Cleaveland ("Cleaveland"). (*Id.* ¶ 22). In a letter sent to Carlton from an attorney (who is not

named in the Second Amended Complaint), dated April 22, 2021 (hereinafter, the "Attorney letter"), Carlton was notified "that he was prohibited from attending Defendant WCRC's meetings and was threatened with criminal prosecution if he continued to attend." (Docket No. 40 at 4; *see also* Docket No. 31, ¶¶ 23, 24). Carlton was later informed by several members of the WCRC, including the WCRC's chairman, that they were unaware of the letter or its contents. (Docket No. 31, ¶¶ 25, 26). Cleaveland also later told Carlton that Wayman had been behind the letter. (*Id.* ¶ 27). Carlton "believes, and therefore avers, that [Wayman] initiated that letter in retaliation for [Carlton's] political opposition to [Wayman] and to prevent [Carlton] from engaging in the political process." (*Id.* ¶ 29).

According to the Second Amended Complaint, on or about February 7, 2022, "Concerned Citizens of Penn Trafford School District" sent a letter (hereinafter, the "Concerned Citizens letter") to Carlton's employer, Penn Trafford School District. (Docket No. 31, ¶¶ 30, 31). The letter made false allegations against Carlton, including that he "spreads lies and slander[s] people because he is upset that he was unseated from the Norwin School Board," and that he had engaged in "unprofessional and possibly illegal behavior." (*Id.* ¶ 31). The Concerned Citizens letter also alleged that members of the WCRC were "afraid to attend meetings" because of the "violence and threats made by [Carlton]." (*Id.* ¶ 32). The letter further threatened to report Carlton to the Department of Education "and or the proper legal authorities." (*Id.* ¶ 35). Prior to Penn Trafford School District receiving this letter, Wayman told individuals within Carlton's community, members of the WCRC including Cleaveland, Joanna Jordan, and Darlene Ciocca, that he would attempt to have Carlton removed from his position as a teacher in retaliation for Carlton's political opposition to Wayman. (*Id.* ¶¶ 37, 38). Carlton "believes, and therefore avers, that [Wayman] sent that letter, in his capacity as a duly elected school board member and/or in his capacity as a

duly elected member of [the WCRC], in retaliation for [Carlton's] political opposition to [Wayman]." (*Id.* ¶ 36).

Carlton further avers that Wayman knew or should have known that the statements contained in the Concerned Citizens letter were patently false and defamatory and placed Carlton in a false light to members of his community. (Docket No. 31, ¶ 39). Carlton also states that he "believes, and therefore avers, that [Wayman] made the statements contained in the [Concerned Citizens letter] with the intent to harm [Carlton's] reputation, defame [Carlton's] character, negatively affect [Carlton's] career, and to cause [Carlton] emotional distress." (*Id.* ¶ 40). Carlton further states that Wayman's conduct has negatively affected Carlton's reputation, placed him in a false light to members of his community, and otherwise defamed his character. (*Id.* ¶ 43).

The Second Amended Complaint contains three Counts. Count I, brought pursuant to Section 1983 and based on the Attorney letter, alleges that both Wayman and the WCRC retaliated against Carlton for voicing political opposition to, and politically opposing, Wayman, in violation of Carlton's rights under the First Amendment of the United States Constitution. (Docket No. 31 at 7-8). Count II, brought pursuant to Section 1983 and based on the Concerned Citizens letter, alleges that Wayman retaliated against Carlton for voicing political opposition to, and politically opposing, Wayman, in violation of Carlton's First Amendment rights. (*Id.* at 8-9). In Count III, Carlton alleges a claim of libel *per se* under Pennsylvania common law against Wayman alone, based on the Concerned Citizens letter. (*Id.* at 10-11). In moving to dismiss Carlton's Second Amended Complaint, both the WCRC and Wayman argue that Carlton has failed to state a claim upon which relief can be granted, and that the Second Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Carlton filed his responses opposing Defendants' motions, and the matter is now ripe for decision.

### III.     STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all

factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. <u>DISCUSSION</u>

Carlton brings his claims at Counts I and II against Defendants pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but rather provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). In this case, Carlton asserts that Defendants violated his right to be free from retaliation based on political opposition under the First Amendment of the Constitution. (Docket No. 31, ¶¶ 50, 56). Carlton seeks compensatory damages, costs, attorney fees, interest, punitive damages from Wayman, and any other relief, including injunctive and/or declaratory relief, that the Court may deem proper. (*Id.* at 8, 9, 11).

**A. Count I against the WCRC:  First Amendment Retaliation**

Carlton alleges in Count I, which is based on the Attorney letter he received, that the WCRC and Wayman retaliated against him, in violation of his First Amendment rights, for opposing Wayman politically.  In moving to dismiss this claim, the WCRC argues, among other things, that Carlton has not adequately alleged facts showing that the WCRC's actions were taken under color of state law.

To state a First Amendment retaliation claim, a plaintiff must sufficiently allege "(1) that [plaintiff] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  As explained, *supra*, to state such a claim under Section 1983, a plaintiff must also show that the person depriving the plaintiff of a constitutionally protected right was acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 47 (1988). "Acting under color of state law" requires a defendant to "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *See id.* (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

In moving to dismiss this claim, the sole claim lodged against it in this action, the WCRC argues that, even assuming that Carlton was engaging in constitutionally protected activity under the First Amendment (and also assuming that the Attorney letter is attributable to the WCRC), Carlton has pled no substantial and direct nexus between the alleged actions of the WCRC and the state in order to establish that the WCRC was acting under the auspices of state law here.  In considering whether political parties' actions are outside judicial review when those parties are acting according to their own internal procedures, a case recently decided by the Supreme Court

of Pennsylvania, *Mohn v. Bucks County Republican Committee*, is instructive. *See* 259 A.3d 449 (Pa. 2021). *Mohn* involved a Republican Committee member who backed an unendorsed candidate for office and was facing discipline by the Republican Committee on an internal-policy ethics complaint. *See id.* at 450-51. In *Mohn*, the Supreme Court of Pennsylvania held that the Republican Committee was acting according to its own bylaws which, in that case, were not subject to judicial review. *See id.* In so finding, the *Mohn* Court explained that, to justify judicial intervention, a plaintiff "must point to some discrete acts or actions entailing state action to establish the required direct-and-substantial nexus, such as the nomination of candidates for local judgeships raised in *Bentman*.[2]" The *Mohn* Court continued that, in the case before it, "[s]ince appellant has failed to do so, we credit Appellee's position that through its internal, self-organized apparatus, [it was] permitted to construe its own governing rules and to disqualify elected occupants of its offices from participation in its affairs by exercising its own judgment, free from judicial interference." *Id.* (internal quotation marks and citation omitted).

Similarly, in this case, Carlton has failed to allege any discrete acts entailing state action in order to establish the requisite "direct and substantial nexus" between the state and the WCRC here. Carlton alleges, in essence, that he received the Attorney letter through the WCRC's internal operating procedures, and that the letter specifically precluded him from attending WCRC District 3 meetings. Carlton's allegation that Wayman initiated this process in retaliation for Carlton

---

[2]  In *Bentman v. Seventh Ward Democratic Exec. Comm.*, 218 A.2d 261, 266-68 (Pa. 1966), the Pennsylvania Supreme Court permitted judicial intervention in the internal workings of a political party because it found that, in that instance, the Democratic Party was participating in state action because it was, under certain circumstances, substituting its internal vote for a primary election for judicial offices. Even in that case, however, the court specified, "Judicial interference, even with the internal organization of a political party, is justifiable if such internal organization may directly affect the performance of a public function and the public interest. The invocation of judicial interference in this area must be restricted or circumscribed; judicial intervention must be limited to controversies where the issue raised bears a Direct and Substantial relationship to the performance of Public functions by the political party." *Id.* at 266. In the present case, as explained, *supra*, Carlton has not averred facts showing a nexus to a public function by the WCRC.

opposing him politically and to prevent Carlton from engaging in the political process, without more, is insufficient, as the Second Amended Complaint does not set forth any additional facts to show that the WCRC was acting under color of state law.

Moreover, during oral argument on Defendants' previously filed motions to dismiss the Amended Complaint, the Court engaged in discussion with the parties on this very issue. (Docket No. 28; Oral Argument regarding Defendants' motions to dismiss, held on Feb. 21, 2023 ("Oral Argument")[3]). In fact, in issuing its rulings during that hearing, the Court specifically stated that, even assuming Carlton engaged in protected activity, the Amended Complaint failed to adequately plead discreet acts or actions entailing state action in order to establish the required direct and substantial nexus to the performance of a public function. (Oral Argument). Further, the Court clearly instructed at that time that nothing in the Amended Complaint addressed the nexus to a public function, and that, in order for such claim to survive, Carlton's complaint would need to include such averments.[4] (*Id.*).

In the Second Amended Complaint, Carlton has added a few new allegations regarding the Attorney letter, but none of the additional allegations aver facts showing a direct and substantial nexus to the performance of a public function by the WCRC.[5] Therefore, the Court finds that

---

[3] An official transcript of the hearing during which oral argument was held has not been produced as of this date. Therefore, the Court discusses the testimony presented by reference to an unofficial draft of the transcript.

[4] The Court also noted, during oral argument on Defendants' motions to dismiss the Amended Complaint, that various references had been made, in briefs and during the argument itself, to Pennsylvania's election code and the WCRC's bylaws, but that the Amended Complaint contained no allegations referring to such law or internal bylaws. (Oral Argument). While the Court further indicated that such inclusions would not necessarily be sufficient to allege a direct and substantial nexus to a public function, the Court also notes that the Second Amended Complaint makes no reference to such law or bylaws. (*Id.*).

[5] For instance, the new allegations in the Second Amended Complaint include averments that Carlton "was informed by several members of [the WCRC] that they were unaware of the letter or of its contents," that the WCRC's chairman "informed [Carlton] that he was unaware of the letter or of its contents," and that "Mr. Cleaveland informed [Carlton] that [Wayman] had been behind the letter." (Docket No. 31, ¶¶ 25-27). None of these allegations provide a factual basis or support for Carlton's allegation that the WCRC acted under color of state law.

Carlton has failed to allege facts showing that the WCRC was acting under color of state law and, once again, the Court concludes that the Second Amended Complaint fails to state a claim upon which relief can be granted against the WCRC for First Amendment retaliation. Accordingly, Carlton's claim at Count I against the WCRC will be dismissed pursuant to Rule 12(b)(6).

### B. Counts I and II against Wayman: First Amendment Retaliation

Count I also alleges that Wayman (along with the WCRC) retaliated against Carlton for opposing him politically, in violation of Carlton's First Amendment rights. As with the claim against the WCRC, the allegedly retaliatory action at issue in Count I against Wayman is the Attorney letter, which barred Carlton from attending the WCRC District 3 meetings. Count II, lodged against Wayman alone, also alleges that Wayman retaliated against Carlton for opposing him politically in violation of Carlton's First Amendment rights, but the allegedly retaliatory action at issue in Count II is the Concerned Citizens letter that was sent to Penn Trafford School District.

As set forth, *supra*, to state a First Amendment retaliation claim, in addition to alleging (1) facts showing the plaintiff's protected activity, and (2) that the defendant's retaliation was sufficient to deter a person of ordinary firmness from exercising his or her rights, a plaintiff must also sufficiently allege (3) that there was a causal connection between the protected activity and the defendant's retaliatory action. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d at 267. To establish this third element, the requisite causal connection between the protected speech and the retaliation, there must be either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*

Here, Carlton alleges that, after he made protected statements and took protected actions in August and September of 2020, he received the retaliatory Attorney letter in April, 2021.

(Docket No. 31, ¶¶ 10-19, 23).  However, Carlton does not allege that Wayman actually wrote or sent the Attorney letter.  Instead, Carlton alleges more generally that Wayman was "behind" or "initiated" the letter.  (*Id.* ¶¶ 27, 28).  However, the Attorney letter came from an attorney (who is not named in the Second Amended Complaint), and Carlton does not allege that the letter made any mention of Wayman.  (*Id.* ¶¶ 23, 24).  These facts as pled, without more, simply do not plausibly allege a connection between Wayman and the Attorney letter, the retaliatory act upon which Count I is based, *i.e.,* that the Attorney letter sent to Carlton was a retaliatory act *by Wayman*.

In contrast, at Count II Carlton alleges, in a conclusory manner, that Wayman "sent" the Concerned Citizens letter to the Penn Trafford School District.  (Docket No. 31, ¶ 54).  However, Carlton pleads no facts to support that allegation.  Carlton does not allege that Wayman is a citizen or a parent of Penn Trafford School District, nor does Carlton allege that Wayman was the author of or made the statements contained in the Concerned Citizens letter.  In fact, Plaintiff does not set forth any basis for his belief that Wayman authored or made the statements contained in the Concerned Citizens letter.  Therefore, the facts pled in the Second Amended Complaint do not plausibly allege a connection to link the Concerned Citizens letter, the retaliatory act upon which Count II is based, to Wayman, and thus they do not allege that the Concerned Citizens letter sent to Penn Trafford School District was a retaliatory act *by Wayman*.

The Court previously addressed this issue during oral argument on Defendants' motions to dismiss the Amended Complaint.  (Oral Argument).  There, the Court clearly explained that the Amended Complaint did not adequately allege facts that connect the Attorney letter to Wayman, nor did the Amended Complaint show a nexus – nor could reasonable inferences be drawn – to connect the Concerned Citizens letter to Wayman as the author who had sent it.  (*Id.*).  Although Carlton has added a few new allegations in the Second Amended Complaint, those additional

12

averments do not connect the Attorney letter or the Concerned Citizens letter to Wayman, as the Court previously indicated was necessary.[6]

To the extent Carlton argues that the Court can infer that Wayman sent the Concerned Citizens letter and that Wayman can be held responsible for the Attorney letter – and thus find that the causation element has been adequately pled here (and that the retaliatory acts are attributable to Wayman) – based on the "temporal proximity" of the various events alleged, the Court disagrees. Carlton's receipt of the Attorney letter approximately seven (7) months after the alleged protected activity occurred is simply not "unusually suggestive temporal proximity" to show a causal connection between his protected conduct and the retaliatory act. Similarly, the Concerned Citizens letter being sent to Penn Trafford School District approximately sixteen (16) months after the alleged protected activity occurred is, likewise, not unusually suggestive temporal proximity to show a causal connection between Carlton's protected activity and the retaliatory act. *See, e.g., Miller v. Luzerne Cnty. Dep't of Corrs.*, Civil No. 3:18-CV-858, 2022 WL 22017274, at *5 (M.D. Pa. Mar. 14, 2022), *report and recommendation adopted by* 2022 WL 22017160 (M.D. Pa. May 2, 2022) (in the context of a First Amendment retaliation claim, citing various cases from sister courts and noting that "courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation").

---

[6] For example, with regard to the Concerned Citizens letter, the Amended Complaint previously alleged that Wayman made statements to individuals in the community that he would attempt to have Carlton removed from his position as a teacher in retaliation for his political opposition to Wayman (Docket No. 7, ¶ 50), whereas the Second Amended Complaint includes allegations that such statements were made to individuals within Carlton's community, various members of the WCRC (including Cleaveland and two other named individuals), before Penn Trafford School District received the letter at issue. (Docket No. 31 at ¶¶ 37, 38). However, such new allegations still do not provide a factual basis to connect the Concerned Citizens letter to Wayman.

Therefore, the Court finds that the Second Amended Complaint does not adequately allege claims of First Amendment retaliation against Wayman at Counts I and II, and such claims will be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### C.     Count III against Wayman:  Libel *Per Se* Under Pennsylvania Common Law

In his Second Amended Complaint, Carlton also alleges an ancillary state law claim against Wayman for libel *per se* under Pennsylvania common law.  (Docket No. 31 at 10-11).  Even if the Second Amended Complaint contained sufficient allegations to state a claim for such tort under Pennsylvania law – which the Court does not find – the Court could only consider this claim under its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.  However, 28 U.S.C. § 1367(c) provides that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  Additionally, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Upon consideration, there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Carlton's libel *per se* claim under Pennsylvania law.  Accordingly, in this instance, the Court will decline to exercise supplemental jurisdiction over such claim and will dismiss Count III without prejudice to Carlton's ability to allege such claim should he choose to file a third amended complaint, and without prejudice to Carlton's ability to bring such claim in state court.

V. **CONCLUSION**

For the reasons stated, Wayman's Motion to Dismiss 2nd Amended Complaint (Docket No. 32) and the WCRC's F.R.C.P. 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 34) are both granted.

Carlton's claims at Counts I and II are dismissed, without prejudice, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In granting Defendants' motions to dismiss the prior Amended Complaint, the Court provided Carlton with clear indications of his claims' areas of deficiency. Despite the Court's instructions, Carlton failed to cure the previously identified deficiencies in his Second Amended Complaint. Given this failure, and considering the parties' arguments regarding the Second Amended Complaint, the Court is skeptical that these deficiencies can be cured. However, the Court will grant Carlton a short period of time to amend his complaint once more if he chooses to do so.

Additionally, the Court will decline to exercise supplemental jurisdiction over Carlton's state law claim at Count III, and that claim is dismissed without prejudice to Carlton's ability to allege such claim should he choose to file a third amended complaint, and without prejudice to Carlton's ability to bring such claim in state court.

An appropriate Order follows.


Dated: September 30, 2024                *s/ W. Scott Hardy*
                                          W. Scott Hardy
                                          United States District Judge

cc/ecf: All counsel of record