IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN CARLTON,                                  )
                                                )
                    Plaintiff,                  )
                                                )
              v.                                )
                                                )     Civil Action No. 22-480
ROBERT WAYMAN and                               )
WESTMORELAND COUNTY                             )
REPUBLICAN COMMITTEE,                           )
                                                )
                    Defendants.                 )

## MEMORANDUM OPINION

### I.     INTRODUCTION

Plaintiff Brian Carlton ("Carlton") brings this civil rights action, pursuant to 42 U.S.C.
§ 1983, against Defendants the Westmoreland County Republican Committee (the "WCRC") and
Robert Wayman ("Wayman").  (Docket No. 44).  Carlton's claims arise in relation to statements
he made and actions he took, as president of the Norwin School Board, in political opposition to
Wayman, also an elected member of the Norwin School Board.  Plaintiff avers that, in response to
his activity that is protected under the First Amendment to the United States Constitution, the
WCRC retaliated against him (Count I), and Wayman committed the tort of libel *per se* under
Pennsylvania law (Count II).

The Third Amended Complaint (Docket No. 44), which is the operative complaint here, is
now the fourth complaint filed in this matter.  In the initial Complaint and the first Amended
Complaint, Carlton's wife, Margaret Carlton, was also a named plaintiff, and the Norwin School
District was also named as a defendant.  (Docket Nos. 1, 7).  In response to Carlton's Amended
Complaint, which contained seven counts, Defendants filed motions to dismiss and, after the

parties' briefing was complete, the Court held oral argument on those motions. (Docket No. 28). Through a combination of Carlton's concessions and the parties' stipulating to voluntary dismissal of certain claims, the claims against Norwin School District were dismissed and Margaret Carlton was terminated as a named plaintiff. After consideration of the parties' briefs and hearing oral argument, the Court granted Defendants' motions to dismiss the remaining claims in the Amended Complaint (some with prejudice and some without prejudice) and Carlton was given leave to amend. (Docket No. 30). Thereafter, Carlton filed his Second Amended Complaint, which contained three counts, and the remaining Defendants again filed motions to dismiss. The Court granted Defendants' motions and gave Carlton one final chance to amend his claims. (Docket Nos. 42, 43). Carlton subsequently filed his Third Amended Complaint, which contains only two counts.

Presently before the Court are Defendants' motions to dismiss Plaintiff's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, along with briefs in support filed by the WCRC (Docket Nos. 45, 46) and Wayman (Docket Nos. 47-49). Carlton has filed a brief in opposition to each of Defendants' motions. (Docket Nos. 50, 51). For the following reasons, the WCRC's motion to dismiss will be granted, and the First Amendment retaliation claim against the WCRC at Count I will be dismissed with prejudice. Additionally, the Court will decline to exercise supplemental jurisdiction over Carlton's state law claim against Wayman, so Wayman's motion to dismiss for failure to state a claim will be denied as moot, and the claim at Count II will be dismissed without prejudice to Carlton's ability to bring such claim in state court.

II.    **FACTUAL BACKGROUND**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Third Amended Complaint[1] and in the light most favorable to Carlton, that are relevant to the motions presently before the Court.  Carlton is a resident of Westmoreland County, Pennsylvania, and at the time of the events at issue here, was the duly elected president of the Norwin School District Board of Education (the "Norwin School Board").  (Docket No.  44, ¶¶ 5, 13).  Defendant Wayman is a resident of Westmoreland County, Pennsylvania, and at all times relevant to the facts alleged, was and is a duly elected board member of the Norwin School District and a duly elected official of Defendant WCRC.  (*Id.* ¶ 6).  The WCRC is a political committee with elected officials in Westmoreland County, Pennsylvania.  (*Id.* ¶ 7).  The WCRC has several subdivisions within Westmoreland County, one of which is WCRC District 3, which represents North Huntingdon, Irwin, and North Irwin, Pennsylvania.  (*Id.* ¶ 8).  Carlton alleges that, at all times relevant to this action, "Defendant WCRC was acting through its partners, directors, agents subsidiaries, officers, employees and assigns within the full scope of their respective agency, office, employment, or assignment, including, but not limited to, Defendant Wayman."  (*Id.* ¶ 9).

Carlton avers that in or about August of 2020, in his capacity as president of the Norwin School Board, he issued various public statements condemning inappropriate and offensive statements that had been made by Wayman, who was a member of the Norwin School Board at the time he made such statements.  (Docket No. 44, ¶¶ 10-14).  During a meeting of the Norwin School Board on September 21, 2020, Carlton also voted in favor of motions to call for Wayman's

---

[1]    Carlton contends that this Court has subject matter jurisdiction over his Section 1983 claim pursuant to 28 U.S.C. § 1331 because it involves a federal question.  (Docket No. 44, ¶ 3).  Carlton also avers a related tort claim under Pennsylvania law, which entails the Court's exercise of supplemental jurisdiction.  *See* 28 U.S.C. § 1367.

resignation, to censure Wayman, and to remove Wayman from his position as Pennsylvania School Board Association liaison, none of which passed. (*Id.* ¶¶ 15, 17, 18). During that same meeting, Wayman stated that he would seek recourse against any individual who voted to take any action against him. (*Id.* ¶ 16).

In April, 2021, Carlton spoke at a WCRC District 3 meeting to seek an endorsement for his re-election to the Norwin School Board. (Docket No. 44, ¶ 24). Carlton avers that he did not act in any inappropriate or harassing manner during that meeting. (*Id.* ¶ 25). Sometime afterward, Wayman, in his capacity as a duly elected official of the WCRC, discussed taking action against Carlton with other members of the WCRC, including WCRC District 3's chairman, Steve Cleaveland ("Cleaveland"). (*Id.* ¶ 26). In a letter sent to Carlton from an attorney (who is not named in the Third Amended Complaint), dated April 22, 2021 (hereinafter, the "Attorney letter"), Carlton was notified "that he was prohibited from contacting Defendant WCRC or its chairman, Mr. Cleaveland," that he was prohibited "from attending Defendant WCRC's District 3 meetings," and he was threatened with criminal prosecution if he did so. (*Id.* ¶¶ 26-28). Carlton was later informed by several members of the WCRC, including the WCRC's chairman, that they were unaware of the letter or its contents. (*Id.* ¶¶ 29, 30). Cleaveland also later told Carlton that Wayman "had been behind the letter." (*Id.* ¶ 31). Carlton "believes, and therefore avers, that [Wayman] initiated that letter in retaliation for [Carlton's] political opposition to [Wayman] and to prevent [Carlton] from engaging in the political process by disqualifying [Carlton] from obtaining Defendant WCRC's endorsement in his re-election campaign." (*Id.* ¶ 33).

Additionally, Carlton avers that on or about February 7, 2022, "Concerned Citizens of Penn Trafford School District" sent a letter (hereinafter, the "Concerned Citizens letter") to Carlton's employer, Penn Trafford School District. (Docket No. 44, ¶¶ 34, 35). The letter made false

allegations against Carlton, including that he "spreads lies and slander[s] people because he is upset that he was unseated from the Norwin School Board," and that he had engaged in "unprofessional and possibly illegal behavior." (*Id.* ¶ 35). The Concerned Citizens letter also alleged that members of the WCRC were "afraid to attend meetings" because of the "violence and threats made by [Carlton]." (*Id.* ¶ 36). The letter further threatened to report Carlton to the Department of Education "and or the proper legal authorities." (*Id.* ¶ 39). Prior to Penn Trafford School District receiving this letter, Wayman told individuals within Carlton's community, members of the WCRC including Cleaveland and others, that he would attempt to have Carlton removed from his position as a teacher in retaliation for Carlton's political opposition to Wayman. (*Id.* ¶¶ 40, 41). Carlton "believes, and therefore avers, that [Wayman] authored and sent" the Concerned Citizens letter. (*Id.* ¶ 43).

In the Third Amended Complaint, Carlton now alleges two claims. Count I, brought pursuant to Section 1983 and based on the Attorney letter, alleges that the WCRC retaliated against Carlton for voicing political opposition to and politically opposing Wayman, in violation of Carlton's rights under the First Amendment. (Docket No. 44 at 7-8). In Count II, based on the Concerned Citizens letter, Carlton alleges a Pennsylvania common law tort claim of libel *per se* against Wayman alone. (*Id.* at 8-9). In moving to dismiss Carlton's Third Amended Complaint, the WCRC and Wayman both argue that Carlton has failed to state claims upon which relief can be granted, and that the Third Amended Complaint should be dismissed pursuant to Rule 12(b)(6). Carlton filed his responses opposing Defendants' motions, and the matter is now ripe for decision.

## III.    STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the

plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)). Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court notes the elements of a claim.  *See id.* (citing *Iqbal*, 556 U.S. at 675).  Second, the Court eliminates conclusory allegations.  *See id.* (citing *Iqbal*, 556 U.S. at 679).  And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV.    DISCUSSION

### A.    Count I against the WCRC:  First Amendment Retaliation

Count I of the Third Amended Complaint, brought pursuant to Section 1983, asserts that the WCRC violated Carlton's First Amendment right to be free from retaliation based on political opposition.[2]  (Docket No. 44, ¶ 50).  Specifically, Carlton alleges that "Wayman initiated [the Attorney] letter in retaliation for [Carlton's] political opposition to [Wayman] and to prevent [Carlton] from engaging in the political process *by disqualifying the Plaintiff from obtaining Defendant WCRC's endorsement in his re-election campaign*."  (Docket No. 44, ¶ 33 (emphasis added)).[3]  Carlton alleges that the Attorney letter, initiated by Wayman and sent on behalf of the WCRC, barred Carlton from attending WCRC District 3 meetings or contacting its chairman – disqualifying him from obtaining the WCRC's campaign endorsement – and threatened criminal prosecution.  (*Id.* ¶¶ 33, 51).  In moving to dismiss the Third Amended Complaint, the WCRC argues, among other things, that Carlton's Section 1983 claim should be dismissed for failure to state a claim because Carlton has failed to allege that the WCRC is a "state actor," or that the

---

[2]      Although both the WCRC and Wayman were previously named as Defendants in Count I, the Third Amended Complaint names only the WCRC as a Defendant in that Count.  However, the alleged actions upon which Count I is based remain those of Wayman, who Carlton alleges was acting on behalf of the WCRC and was "behind" or "initiated" the Attorney letter.  (Docket No. 44, ¶¶ 9, 31-33).

[3]      The specific language that is shown here in italics was added in the Third Amended Complaint, and appears to clarify the basis of Carlton's First Amendment retaliation claim.

WCRC was acting "under color of state law," in engaging in such conduct.  *See West v. Atkins*, 487 U.S. 42, 47 (1988).

### 1.    <u>Section 1983:  Action Under Color of State Law</u>

Section 1983 does not create any substantive rights, but instead provides a remedy for deprivations of rights created by the Constitution of the United States or federal law.  *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (discussing 42 U.S.C. § 1983).  "To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  The "color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."  *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  "Acting under color of state law" requires a defendant to "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Id.* (quoting *West v. Atkins*, 487 U.S. at 49 (additional internal quotation marks and citations omitted)).  However, "merely private conduct, no matter how discriminatory or wrongful," does not fall within the ambit of Section 1983.  *Sullivan*, 526 U.S. at 50 (internal citations and quotation marks omitted); *National Collegiate Ath. Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (explaining that "[a]s a general matter the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights" (internal quotation marks and citation omitted)); *Lugar v. Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991) (stating that "the conduct of private parties lies beyond the Constitution's scope in most instances").

"Although there is no 'simple line' between state and private actors, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001), . . . '[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks and citation omitted)).  In determining whether "state action" exists, courts consider:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Id.* (internal quotation marks and citation omitted); *see also Ponsford v. Mercyhurst Univ.*, Civ. Action No. 19-217, 2020 WL 1049180, at *1-3 (W.D. Pa. Mar. 4, 2020) (granting the defendant's motion to dismiss the plaintiff's claims, brought pursuant to Section 1983, finding that the plaintiff had not shown that the defendant was a state actor under any of the three tests set forth in *Kach* or under any of the other cases that the plaintiff had cited); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 631-32 (E.D. Pa. 2018) (citing the *Kach* tests in a Section 1983 case involving First Amendment claims against a political committee, and finding that, in that case, the Democratic Committee was acting as a private organization and not under color of state law).  Each of these tests focuses on whether the government is responsible for the conduct that a plaintiff alleges.  *See Borell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017).  Importantly, determining whether a defendant is a state actor necessitates a fact-based analysis of a complaint's allegations.  *See Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009).

Moreover, "[t]he Third Circuit has explicitly held over the last two decades that private entities do not transform into state actors under § 1983 simply because they may receive extensive government regulation and funding." *Egli v. Chester Cnty. Library Sys.*, 394 F. Supp. 3d 497, 504 (E.D. Pa. 2019) (citing *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 719 (3d Cir. 2012), and *Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 244 (3d Cir. 2002)).  In the context of First Amendment cases, specifically, "the Supreme Court has held that extensive government regulation does not transform a private entity into a state actor." *Id.* (citing *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019), and *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Thus, "[s]imply having to adhere to the statutory directive of the Constitution of the United States of America and acts of Congress and the Commonwealth of Pennsylvania does not create a sufficient nexus with the state." *Schneller v. Philadelphia Newspapers, Inc.*, Civ. Action No. 11-5071, 2012 WL 3704758, at *4 (E.D. Pa. Aug. 28, 2012) (internal quotation marks omitted); *see also Valenti v. Pennsylvania Democratic State Comm.*, 844 F. Supp. 1015, 1016–18 (M.D. Pa. 1994) (concluding that the Democratic Party was not a state actor even though its role is defined by the Pennsylvania Election Code).  Instead, "a private entity can qualify as a state actor in a few limited circumstances – including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Egli*, 394 F. Supp. 3d at 505 (citing *Halleck*, 587 U.S. at 809 (internal quotation marks and additional citations omitted)).

### 2.    The Parties' Arguments Regarding Allegations of State Action

In this case, the WCRC argues that, even assuming that Carlton was engaged in protected activity under the First Amendment (and assuming that the Attorney letter is properly attributable

to the WCRC), Carlton has pled no direct and substantial nexus between the alleged actions of the WCRC and the state in order to establish that the WCRC was acting under the auspices of state law in notifying Carlton that he was prohibited from attending WCRC District 3 meetings or contacting its chairman, thereby disqualifying him from obtaining the WCRC's campaign endorsement. Specifically, the WCRC asserts that it is not a state actor or part of the state government, and that it is instead "a bunch of volunteers with like-minded thinking who chose to spend their time with the political process." (Docket No. 46 at 9). Accordingly, the WCRC argues that Carlton has not shown that, in sending the Attorney letter to Carlton, any of the three tests set forth in *Kach* have been met:

> The WCRC has not "exercised powers that are traditionally the exclusive prerogative of the state"; the WCRC has not "acted with the help of or in concert with state officials"; and the state has not "so far insinuated itself into a position of interdependence with the [WCRC] that it must be recognized as a joint participant in the challenged activity."

(*Id.* (quoting *Kach*, 589 F.3d at 646)).

In further support of its argument, the WCRC cites to the holding of the Pennsylvania Supreme Court in *Mohn v. Bucks County Republican Committee*, 259 A.3d 449 (Pa. 2021), which this Court previously addressed in its Memorandum Opinion granting Defendants' motions to dismiss the Second Amended Complaint (Docket No. 42). (Docket No. 46 at 9). *Mohn* involved the issue of whether political parties' actions are outside judicial review when those parties are acting according to their own internal procedures. In that case, a Republican Committee member, who had backed an unendorsed candidate for office, was facing discipline by the Republican Committee on an internal-policy ethics complaint. *See* 259 A.3d at 450-51. The Supreme Court of Pennsylvania held that the Republican Committee was acting according to its own bylaws which, in that case, were not subject to judicial review. *See id.* at 464-65. In so finding, the *Mohn*

11

Court explained that, to justify judicial intervention, a plaintiff "must point to some discrete acts or actions entailing state action to establish the required direct-and-substantial nexus, such as the nomination of candidates for local judgeships raised in *Bentman*."[4]  *Id.*  The *Mohn* Court continued that, in the case before it, "[s]ince Appellant has failed to do so, we credit Appellee's position that, through its internal, self-organized apparatus, [it was] permitted to construe its own governing rules and to disqualify elected occupants of its offices from participation in its affairs by exercising its own judgment, free from judicial interference."  *Id.* at 465 (internal quotation marks and citation omitted).  Here, the WCRC argues that, like the Republican Committee's conduct in *Mohn*, the Attorney letter was sent in the course of the WCRC's own internal procedures and similarly did not constitute state action.

In responding to the WCRC's argument, Carlton makes no specific reference to any of the tests set forth in *Kach*, and instead cites to other sources to support his argument.[5]  First, Carlton cites to the section of the Pennsylvania Election Code that is included in the Third Amended Complaint, which provides as follows:

> There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary, or appointed, as the rules of the respective parties within the county may provide. The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of

---

[4]     In *Bentman v. Seventh Ward Democratic Executive Committee*, the Pennsylvania Supreme Court permitted judicial intervention in the internal workings of a political party because it found that, in that instance, the Democratic Party was participating in state action because it was, under certain circumstances, substituting its internal vote for a primary election for judicial offices.  *See* 218 A.2d 261, 266-68 (Pa. 1966).  Even in that case, however, the court specified, "Judicial interference, even with the internal organization of a political party, is justifiable if such internal organization may directly affect the performance of a public function and the public interest. The invocation of judicial interference in this area must be restricted or circumscribed; judicial intervention must be limited to controversies where the issue raised bears a Direct and Substantial relationship to the performance of Public functions by the political party."  *Id.* at 266.

[5]     Although Carlton does not specifically cite to the tests proffered in *Kach*, the Court addresses herein those tests, as well as the arguments that Carlton presents and the law, bylaws, and cases upon which Carlton relies in opposing the WCRC's motion to dismiss.  *See, e.g., Ponsford*, 2020 WL 1049180, at *1 n.2 (in which the court discussed the *Kach* tests, all of which the plaintiff argued were met, along with the general arguments relying on other cases cited by the plaintiff).

12

the party, as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party.

(Docket No. 44, ¶ 21 (quoting 25 P.S. § 2837)).  Additionally, Carlton cites to the WCRC's Rules and Bylaws (also included in the Third Amended Complaint), which state that "[e]ndorsements for public office at County or higher level may be made by the County Committee at a meeting duly called for said purpose," and that "[t]he Executive Board may make recommendations to the County Committee as to whether to endorse candidates and which candidates to endorse." (*Id.* ¶¶ 22, 23).

However, Carlton draws no connection between the Election Code and WCRC Bylaws and the facts of this case.  After making such references, Carlton simply asserts that the WCRC's actions in barring him from its meetings, thus disqualifying him from obtaining the WCRC's endorsement for his campaign, excluded him from a statutorily recognized political process. Carlton then cites to two Third Circuit cases seemingly in support of such assertion, but he fails to include any discussion as to why the holdings of those cases – which are clearly factually distinct from this case – are persuasive here.  *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (a case brought by a city council member who was ejected by the city council president from a public meeting of the city council, in which the Court remarked, "It is clearly established that when a public official excludes an elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment."); *Burns v. County of Cambria, Pa.*, 971 F.2d 1015 (3d Cir. 1992) (a case involving a question of improper discharge of public employees, in which deputy sheriffs who had campaigned against a candidate for sheriff in an election were found to be protected under the First Amendment from patronage dismissals).

Carlton states in conclusion that the "WCRC's actions clearly extend beyond the internal organization of a political party," and instead "'bear a "direct and substantial relationship to the performance of public functions by the political party."'" (Docket No. 51 at 7 (quoting *Mohn*, 259 A.3d at 456 (which, in turn, quotes *Bentman*, 218 A.2d at 266)). Here again, Carlton concludes his argument by quoting *Mohn*, but he provides no explanation as to how the holding in *Mohn* applies to the facts of this case.

### 3.    The Issue of State Action and Political Parties

Notably, this case involves alleged actions by a political party, and a political party's conduct has been found to be that of a state actor in certain limited circumstances. *See, e.g., Smith v. Allwright*, 321 U.S. 649, 664 (1944) (holding that the Democratic Party was a state actor where the party had a policy limiting membership to white citizens, and membership in the party was an essential qualification for voting in the primary election); *Terry v. Adams*, 345 U.S. 461, 469-70 (1953) (holding that a private Democratic club was a state actor during its primary election because that association's primary was "an integral part, indeed the only effective part, of the elective process" that determined who would govern the county). However, the Third Circuit and district courts within this circuit "have declined to extend the holdings of these Supreme Court cases to the actions of political parties in other contexts." *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 629 (E.D. Pa. 2018).

For example, in *Max v. Republican Committee of Lancaster County*, the Third Circuit held that a Republican committee (the "RCLC") was not a state actor where it attempted to prevent the plaintiff committeewoman ("Max") from campaigning for an unendorsed Republican candidate. *See* 587 F.3d 198 (3d Cir. 2009). In that case, Max alleged that the RCLC retaliated against her in violation of the First Amendment by threatening to remove her from her position, arguing that the

RCLC was a state actor under Section 1983 because the Commonwealth delegated authority to the Republican Party to decide the candidate who would appear on the general election ballot. *See id.* at 199-200.  In siding with the RCLC, and finding that the RCLC was acting as a private party and was not subject to Section 1983 liability as a state actor, the Third Circuit explained:

> Max is correct that state action may be imputed to private groups who carry out functions that are "governmental in nature." *Evans v. Newton*, 382 U.S. 296, 299, 86 S. Ct. 486, 15 L. Ed. 2d 373 (1966) (establishing the "public function" test for state action). However, her contention is unavailing.
>
> As defendants note, Max conflates the role of the RCLC with that of the electorate. That is, she argues that the RCLC, a designated political committee, performs the traditionally public function of choosing candidates for the general election but in fact Pennsylvania delegates such authority to the *registered voters* of the Republican Party. Max's premise fails to distinguish between the RCLC, which endorses candidates in the primary, and the corpus of registered Republican voters who, by voting in the primary election, actually select the nominees for the general election. *See* 25 P.S. §§ 2831, 2812.
>
> * * * *
>
> Moreover, the principal cases upon which Max relies are distinguishable from the one at hand. For instance, Max's blanket assertion—that political parties are state actors during primary elections—derives from two Supreme Court cases from the Jim Crow era. These cases, *Smith v. Allwright*, 321 U.S. 649, 64 S. Ct. 757, 88 L. Ed. 987 (1944), and *Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953), involved two attempts by the Democratic Party of Texas to bar African-Americans from participating in primary elections. In both instances, the Supreme Court sustained the claims under § 1983 because Texas left it up to private groups, i.e. political parties, to decide who could vote so as to intentionally circumvent the Fifteenth Amendment. *See Terry*, 345 U.S. at 466, 73 S. Ct. 809 ("the...right to be free from racial discrimination in voting 'is not to be nullified by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination....'" (quoting *Smith*, 321 U.S. at 664, 64 S. Ct. 757)).
>
> ..."[W]hereas Texas and the Democratic Party were working in concert to deny African-American participation in primaries, nothing in the record here suggests that Pennsylvania delegated authority to defendants with the intention of violating the constitutional rights of Max or anyone else. Max cannot plausibly assert that "the fingerprints of the state" are on the alleged infringement of her rights. *Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005).

*Max,* 587 F.3d at 200-01; *see also Acosta*, 288 F. Supp. 3d at 630 (discussing at length the Third Circuit's decision in *Max*). Other district courts within this Circuit have also held that actions by political parties did not constitute state action. *See, e.g., Neuman v. Ocean City Democratic Cnty. Comm.*, Civ. Action No. 16-2701, 2017 WL 396443, at *5 (D.N.J. Jan. 30, 2017) (finding that a political committee's candidate selection process did not constitute state action, and noting that, in *Max*, "the Third Circuit ultimately held that the endorsement process by which a political party selects a candidate to represent its political platform constitutes internal party affairs that are not subject to 'judicial meddling,' and do not constitute state activity within the meaning of § 1983"); *Valenti v. Pennsylvania Democratic State Comm.*, 844 F. Supp. 1015, 1016-18 (M.D. Pa. 1994) (finding that a political committee was not acting under color of state law where it prohibited candidates for the Democratic nomination from distributing literature because such conduct concerned internal party matters).

Similarly, in *Schneller v. Philadelphia Newspapers, Inc.*, the district court found a political party to be a private actor under circumstances that did not involve internal party conduct. *See* Civ. Action No. 11-5071, 2012 WL 3704758 (E.D. Pa. Aug. 28, 2012), *aff'd*, 577 F. App'x 139 (3d Cir. 2014) (per curiam). In *Schneller*, an independent congressional candidate alleged that the county Republican Party, among other defendants including a newspaper, violated his constitutional rights by defaming him during his campaign. *See id.* at *1. In granting the defendants' motion to dismiss, the court explained:

> Here, Schneller fails to show that any of the Defendants is a state actor within the meaning of § 1983. Although a private entity that "is a willful participant in joint action with the State or its agents" acts "under color of state law" for purposes of § 1983, *see Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980), there is no indication that the Commonwealth of Pennsylvania or one of its agents had any involvement in the actions alleged in the Complaint. Schneller has not demonstrated that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that

16

the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974). . . .

* * * *

Additionally, the role of advocate for a political candidate and the role of voters to elect an individual is not a traditional public function exclusively reserved for the State. Simply having to "adhere to the statutory directive of the Constitution of the United States of America and acts of Congress and the Commonwealth of Pennsylvania" does not create a sufficient nexus with the state.

*Id.* at *3-4; *see also Acosta*, 288 F. Supp. 3d at 630-31 (discussing the district court's decision in *Schneller*).

### 4.    Whether the WCRC was Acting Under Color of State Law

In this case, the Court finds that the WCRC was acting as a private political party entity and not as a state actor when it sent the Attorney letter to Carlton, barring him from attending the WCRC's District 3 meetings or contacting its chairman, which allegedly disqualified him from obtaining the WCRC's campaign endorsement. First of all, none of the tests listed in *Kach* are met here. As to the first test, the "exercised powers" at issue in this case, the Court notes that holding political committee meetings, which, in turn, may lead to campaign endorsements, are not powers that are traditionally the exclusive prerogative of the state. *See Max*, 587 F.3d at 200-01. Carlton does not argue otherwise. Thus, the first test is not met under the facts of this case.

As to the second test listed in *Kach*, "act[ing] with the help of or in concert with state officials," although Carlton specifically cites to the Pennsylvania Election Code and the WCRC Bylaws in both his Third Amended Complaint and in his brief opposing the WCRC's motion, he draws no connection between the Code and Bylaws cited and "state action" under the facts of this case, and no such connection is so obviously apparent to the Court that it need not be explained. Specifically, the section of the Election Code that is cited by Carlton shows that county committees

17

may be established, and that members of such committees are elected in spring primary elections. The WCRC Bylaws cited by Carlton establish that candidate endorsements may be made at a meeting duly called for that purpose, and that the executive board of the WCRC may make recommendations as to proposed endorsements. As discussed, *supra*, simply being subject to state regulation, however, does not transform the WCRC's actions to those of the state. *See Acosta* at 631-32; *Schneller* 2012 WL 3704758, at *4; *Valenti*, 844 F. Supp. at 1016-18. Therefore, Carlton's mere citation to a state law or committee bylaws that are applicable to the WCRC, without more, is not sufficient to plead state action based on the alleged conduct of the WCRC here.

Third, to the extent Carlton wishes to persuade the Court, more generally, that a sufficiently close nexus exists between the government and the action of which he complains – which could also satisfy the third test listed in *Kach*, that "the [s]tate has so far insinuated itself into a position of interdependence with the [WCRC] that it must be recognized as a joint participant in the challenged activity" – Carlton has also failed to provide support for any such argument. Although, as previously noted, Carlton cites to two cases in relation to his assertion that barring him from meetings (which allegedly disqualified him from obtaining the WCRC's campaign endorsement) excluded him from a statutorily recognized political process, Carlton provides no further explanation as to how those cases apply to the facts of this case. And upon independent review of the cases cited by Carlton, the Court finds neither of them to be persuasive in light of the facts of this case and the issues presented here. As previously noted, *Monteiro* addressed a city council president excluding a fellow council member, an elected representative, from a public meeting of the city council, and *Burns* involved the discharge of public employees based on campaigning activities. Neither of those cases is factually similar to this case, where an individual was barred from attending political party committee meetings and was thus allegedly disqualified from being

able to obtain a campaign endorsement from that committee.  Without further explanation as to the relevance of *Monteiro* or *Burns* to the facts of this case, the Court finds the courts' holdings in those cases to be unpersuasive here.

Additionally, Carlton and the WCRC both cite to *Mohn* in support of their arguments. Although Carlton cites to *Mohn* in support of his assertion that the WCRC's actions at issue here extend beyond a political party's internal organization and bear a direct and substantial relationship to the performance of a public function by a political party, Carlton has failed to explain why the Court should so find.  Furthermore, the Court disagrees with Carlton's argument in this regard. Based on the facts alleged in the Third Amended Complaint and the Election Code and Bylaws cited by Carlton:  the WCRC's District 3 meetings and campaign endorsements are not elections; committee meetings and campaign endorsements do not affect voters' essential qualifications for voting in an election; and neither attendance at committee meetings nor WCRC's campaign endorsements controlled whether Carlton was on the ballot in an election.  *See Max*, 587 F.3d at 200-01; *Acosta*, 288 F. Supp. 3d at 631; *Neuman*, 2017 WL 396443, at *5-7.  The Court thus finds that Carlton has not "point[ed] to some discrete acts or actions entailing state action to establish the required direct-and-substantial nexus, such as the nomination of candidates for local judgeships raised in *Bentman*."  *Mohn*, 259 A.3d at 459.  Accordingly, the Court finds that the WCRC's actions at issue in this case do not extend beyond a political party's internal organization, and such actions do not bear a direct and substantial relationship to the performance of a public function by a political party.

Therefore, the Court finds that Carlton has failed to plausibly plead that the WCRC was acting under color of state law when it sent the Attorney letter barring him from attending the WCRC's District 3 meetings or contacting its chairman, which allegedly disqualified him from

19

obtaining the WCRC's campaign endorsement. Because Carlton has not plausibly pled that the WCRC's conduct in this regard constitutes state action, the Court need not reach the adequacy of Carlton's remaining allegations that such conduct constituted retaliation in violation of his First Amendment rights. Accordingly, the Court finds that Carlton has failed to plead sufficient facts to state a plausible First Amendment retaliation claim. The WCRC's motion to dismiss the Third Amended Complaint will therefore be granted for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and Carlton's claim at Count I will be dismissed. As Carlton has had multiple opportunities to cure the deficiencies previously identified by the Court in the course of this litigation, but has been unable to submit allegations to the Court that show a plausible entitlement to relief on this Count, the Court finds that further opportunity to amend would be futile. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 113 (3d Cir. 2018). Therefore, Carlton's claim at Count I will be dismissed with prejudice.

### B.    Count II against Wayman:  Libel *Per Se* Under Pennsylvania Common Law

In Count II of the Third Amended Complaint, Carlton alleges an ancillary state law claim against Wayman for libel *per se* under Pennsylvania common law. (Docket No. 44 at 8-9). Carlton's libel *per se* claim is based on the Concerned Citizens letter that was allegedly sent by Wayman to Carlton's employer, the Penn Trafford School District. Even if the Third Amended Complaint contained sufficient allegations to state a claim for such tort under Pennsylvania law – regarding which the Court expresses no opinion – the Court could only consider this claim under its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. However, 28 U.S.C. § 1367(c) provides that district courts "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Additionally, "where the claim over which the district court has original jurisdiction is dismissed

before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Upon consideration, there is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over Carlton's libel *per se* claim under Pennsylvania law. Therefore, in this instance, the Court will decline to exercise supplemental jurisdiction over such claim and will dismiss Count II without prejudice to Carlton's ability to bring such claim in state court. As the Court will dismiss Count II on such basis, Wayman's motion to dismiss Count II pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, will be denied as moot.

## V.    **<u>CONCLUSION</u>**

For the reasons stated, the WCRC's Motion to Dismiss Plaintiff's Third Amended Complaint (Docket No. 45) will be **<u>granted</u>**. Carlton's claim at Count I will be **<u>dismissed</u>** pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As the Court finds that further amendment of Count I would be futile, such claim will be dismissed **<u>with prejudice</u>**.

Additionally, the Court will decline to exercise supplemental jurisdiction over Carlton's state law claim at Count II, and that claim will be **<u>dismissed without prejudice</u>** to Carlton's ability to bring such claim in state court. As Count II will be dismissed on such basis, Wayman's Motion to Dismiss 3rd Amended Complaint (Docket No. 47) pursuant to Rule 12(b)(6) will be **<u>denied as moot</u>**.

An appropriate Order follows.

Dated:  May 23, 2025                                  *s/ W. Scott Hardy*
                                                                      W. Scott Hardy
                                                                      United States District Judge

cc/ecf:  All counsel of record